————o————

## WILLIAM J. BIGGERSTAFF, Respondent, vs. BENJAMIN HOYT, et al., Appellants.

1. *Equity—Injunction—Judgments, fraudulently assigned.*—A. alleged and proved, that a judgment was obtained against B., himself and another as sureties on B.'s bond; that B. was heavily indebted and that proceedings in bankruptcy were begun against B., but they were dismissed on the agreement of C., a creditor of B., with the judgment creditor and A. to pay the judgment, having it assigned to him, and only to enforce it against B..; that the judgment was assigned to C., who ordered the sheriff to return the executions unsatisfied; that then the judgment could have been made out of B.; that C. caused B.'s property to be attached for his other claims and certain other debts; and subsequently assigned the judgment to other parties, who knew all the facts; that executions were then issued on the judgments; that B. and the other surety had become insolvent. *Held*, that A. was entitled to an injunction to restrain the sale of his property under that execution.

2. *Equity—Evidence—Oral testimony—Suspicious circumstances—Supreme Court.*—Where in an equity case the respondent's testimony was direct and positive, and well sustained all his material averments, while the appellants' testimony was not so satisfactory, and their actions were surrounded by suspicious circumstances and strongly tended to corroborate respondent's allegations, and most of the testimony was oral, this court will not disturb the finding.

### Appeal from Buchanan Circuit Court.

*Zimmerman, with Pike & Pike,* for Appellants.

*Loan & Ramey,* for Respondent.

WAGNER, Judge, delivered the opinion of the court.

This was an application for an injunction to restrain the sale of certain real property belonging to the plaintiff.

The petition stated, that at the May term, 1873, of the Buchanan county circuit court, there were two judgments

31—VOL. LXII.

rendered against Hannah Thornton, and one Day and the plaintiff, who were securities on her appeal bond; that the judgments were in favor of Henry Hoyt, but that they were managed, controlled, and really owned by the defendant, Benjamin Hoyt; that after the judgments were rendered, the defendant Hoyt who managed, controlled and owned the judgments, and knew that they were rendered against the plaintiff as security on the appeal bond, agreed with plaintiff that he would have executions issued and levied on the property of the said Hannah Thornton; that in pursuance of the agreement, executions were issued and placed in the hands of the sheriff with instructions to make the money out of her property; that at the time there was sufficient property belonging to her to pay off and satisfy the executions; that she owned a large amount of property, personal and real, of the value of fifteen thousand dollars, and that the judgment would have been satisfied by the enforcement of the executions but for the fraudulent acts of the defendant Hoyt, and one James Sloan.

It is further alleged, that at that time James Sloan had a deed of trust on the property of Hannah Thornton, which trust deed was not four months old, and that Hannah was indebted to defendant Hoyt in a large sum of money on open accounts, over and above the judgments; that being security on the bonds, for which the judgments were rendered, he would have paid them off and proceeded to collect them of Hannah, but for the agreement of Hoyt to issue, and the issuing of, the executions to make the money out of Hannah's property; that at the time, Sloan, having the deed of trust on the property of Hannah and she being indebted to defendant, Hoyt, in a large sum of money, over and above the judgments, on open accounts, it was determined by Hoyt, defendant, to put Hannah into bankruptcy, and to buy in the property fraudulently held by the Sloan deed of trust and subject it to the payment of Hannah's debts; that for this purpose the proceedings in bankruptcy were commenced by Hoyt, and that Sloan's deed of trust was fraudulent and was

for eight thousand dollars, and Hannah's property was worth fifteen thousand dollars; that Sloan agreed with Hoyt and the plaintiff, that, if the proceedings in bankruptcy were stopped, he would pay off and discharge the judgments, as well as all other indebtedness which Hoyt had against Hannah, and that he would look to her for the payment of the same, and that he would have the judgments assigned to him, and hold them satisfied as to the plaintiff and as an additional lien against Hannah's property; that in pursuance of said agreement, Hoyt stopped the proceedings in bankruptcy, and that Sloan paid to Hoyt the amount of the judgments and all other claims which he held against Hannah including the expenses incurred in the bankrupt proceedings; that Hoyt assigned the judgments to Sloan to enable him to collect them from Hannah, and that plaintiff, relying upon the fulfillment of the contract and upon the assurances made that the judgments were satisfied as to him, paid no further attention to them or to their collection; that Sloan with a full knowledge of all the facts above recited and set forth, ordered the sheriff to return said executions not satisfied, and they were accordingly so returned; that at the time the executions were so returned by Sloan's order, he know where there was sufficient property to have satisfied them, belonging to Hannah, the principal debtor; that Sloan, sued out attachments against Hannah's property and made certain other debts, but held up the judgments and then fraudulently assigned them to one Zimmerman, Hannah's attorney, who took them with a full knowledge of all the facts and agreements between the parties, and that Zimmerman, in furtherance of a fraudulent conspiracy entered into between him and Sloan and the defendant Hoyt to defraud and cheat the plaintiff, assigned and transferred the judgments to the defendant, who took them with a full knowledge of all the circumstances, and who paid no value for them; that defendant Hoyt has had executions issued on the judgments, and placed in the hands of the sheriff, and that Day and Hannah Thornton are wholly insolvent; and injunction is therefore prayed

to enjoin and restrain the defendants from seizing and selling plaintiff's property.

The answer denied all the allegations in the petition, and the court, after hearing the proofs of the respective parties, found for the plaintiff and decreed a perpetual injunction as prayed for.

We have thus abstracted the main points in the petition, because it contains the statements or charges on which the plaintiff relies for relief. The answer was only a denial, and so the issues were sharply presented in the allegations of the petition.

It would be useless to enter into an examination or detail of the evidence. It is sufficient to say, that after a careful perusal of it we are satisfied that the finding and action of the court was correct. The testimony of the plaintiff's witnesses was direct and positive, and well supported all material averments set forth in the bill.

It is true there were denials on the part of the evidence for the defendants, but take it altogether, it was not as satisfactory as that adduced by the plaintiff. The most that can be said is, that the evidence was contradictory, and, as it was principally oral, the court below was much more competent to arrive at a just estimate of its value than we possibly can be.

In such a case we cannot disturb the finding, though we think here, that the plaintiff's testimony was the most satisfactory. Besides the actions of the parties strongly tend to corroborate the plaintiff's allegations and proofs. They are surrounded by suspicious circumstances. The withdrawing of the first executions, when it is alleged there was sufficient property of Hannah Thornton, out of which they could be satisfied; the assignment of the judgments to Sloan upon the discontinuance of the proceedings in bankruptcy; their being held up and subsequent assignment to the defendant, Hoyt, who appears to have been the active manager in all these transactions; constitute facts not easily explainable in consonance with fair dealing towards the plaintiff.

The evidence went strongly to show, that the plaintiff was injured by relying on an agreement with the other parties; that he lost his recourse for indemnity in consequence of their acts; and their good faith in the subsequent transactions is certainly liable to question. No reason is perceived for disturbing the action of the court below.

Judgment is affirmed. All the judges concur, except Judge Vories who is absent.